UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE MCKAY, | Case No.  2:25-cv-02024-DAD-JDP (PS) |
| Plaintiff, | |
| v. | ORDER |
| YUBA COUNTY, *et al.*, | |
| Defendants. | |

   Plaintiff, proceeding *pro se*, brings this case against Yuba County, Yuba County Sheriff Wendell Anderson, and two sheriff's deputies, Keith Gelber and Brian Clegg.  He alleges that these defendants violated his constitutional rights when, in July 2023, they ordered him to leave real property whose ownership was disputed between plaintiff and the "prior owner."  ECF No. 6 at 6-11.  Defendants have moved to dismiss most of plaintiff's claims, ECF No. 9, save for his allegation that their actions amounted to an unlawful seizure of the real property.  *Id.* at 9-1 at 3 n.1.  After review of the pleadings, including plaintiff's sur-reply, ECF No. 18-1, which I have reviewed out of an abundance of caution, I find that defendants' motion should be granted.  I will dismiss the claims implicated therein with leave to amend.  Additionally, I will deny plaintiff's motion to amend or quash summons, ECF No. 12, as unnecessary.

1

**Motion to Dismiss**

**I.     Legal Standards**

A complaint may be dismissed under that rule for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. Iqbal, 556 U.S. at 678.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

**II.    Background**

This action proceeds on the first amended complaint. ECF No. 6. Therein, plaintiff alleges that in May 2023, he purchased a property in Marysville, California on an online auction. *Id.* at 5. He claims that, on July 20, 2023, he was notified by email that the deed to the property had been recorded in his name. *Id.* at 6. He went to the property the next day and inspected the property and had the locks changed. *Id.* That evening, Amit Tumber, the former owner of the property, arrived and verbally confronted plaintiff, demanding that he vacate the premises. *Id.* Tumber eventually called law enforcement and defendants Gelber and Clegg arrived. *Id.* at 6-7.

The deputies could not conclude which individual had ownership of the property, though plaintiff alleges that his narrative of ownership had greater credibility. *Id.* at 7-8. Defendants eventually requested additional documentation and corroboration from plaintiff, but it was evening, and county offices had closed. *Id.* at 10. Additionally, there was not yet internet access at the property. *Id.* Unable to conclusively determine that either man had ownership of the property, the deputies ordered plaintiff to leave, concerned that violence would ensue between the two claimants after they left. *Id.*

Plaintiff eventually reached a settlement with Tumber in February 2024, after taking legal action to recover the property. *Id.* at 11. He alleges that the dispossession of the property and legal proceedings necessary to recover it cost him funds that he could have used to improve the property and damaged his credit rating. *Id.* at 11-12.

**III.     Analysis**

    **a.  Qualified Immunity on Plaintiff's Personal Seizure Claim**

Defendants argue that they are entitled to qualified immunity on plaintiff's claim that they unlawfully seized his person. Qualified immunity precludes civil liability under 42 U.S.C. § 1983 for state officials if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Additionally, defendants may be entitled to qualified immunity "even if they acted unconstitutionally, as long as a reasonable officer could have believed the conduct lawful." *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322 (9th Cir. 1995).

Defendants' argument is persuasive. First, it is unclear whether excluding an individual from a piece of real property, but otherwise allowing him full freedom of movement, amounts to a seizure of his person. *See White v. City of Markham*, 310 F.3d 989, 995 (7th Cir. 2002). Generally, a personal seizure occurs when "there is a restraint on liberty to the degree that a reasonable person would not feel free to leave." *Doe v. Haw. Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003). Here, plaintiff was not only free to leave, he was asked to do so. Obviously, leaving deprived him, at least temporarily, of the property, but as noted above, defendants are not at present challenging plaintiff's claim that his property was unlawfully seized.

      Moreover, even if asking plaintiff to leave the premises did amount to an unlawful seizure of his person, defendants could have reasonably believed their conduct was lawful. The complaint acknowledges that the resources required to make a definitive finding of ownership, including county records, could not be accessed at the time defendants arrived at the property. ECF No. 1 at 10. Plaintiff also alleged that Tumber was confrontational and verbally aggressive toward him during their encounter. *Id.* at 6. Faced with the possibility that violence could escalate in their absence, officers could have reasonably believed that asking one of the two claimants, neither of whom had a conclusive claim of ownership, to leave was lawful.

### b. Procedural Due Process Claim

      Defendants argue that plaintiff's procedural due process claims associated with the incident are barred by the *Parratt-Hudson* doctrine. In *Hudson v. Palmer*, the Supreme Court held that:

> [A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

468 U.S. 517, 533 (1984). As defendants point out, California provides tort remedies for property deprivations. *See Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994). And the facts alleged here present the kind of circumstances in which the *Parratt-Hudson* doctrine should apply, namely that "the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur." *Parratt v. Taylor*, 451 U.S. 527, 541 (1981). It would be unreasonable to expect the state to provide pre-deprivation remedies for a situation like the one at bar, where a buyer takes possession of real property in an online sale and the previous owner, for whatever reason, does not know or understand that the sale has occurred and deprived him of ownership.

### c. Substantive Due Process Claims

Defendants argue that plaintiff's claim, that the deputies interfered with his possessory interest in the property, arises under the Fourth Amendment and does not find any separate purchase in a substantive due process claim. I agree. "Where a claim can be analyzed under 'an explicit textual source' of rights in the Constitution, a court may not also assess the claim under another, 'more generalized,' source." *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1029 (9th Cir. 2002). *See also Graham v. Connor*, 490 U.S. 386, 395 (1989) (referencing *Tennessee v. Garner* and stating, "[t]hough the complaint alleged violations of both the Fourth Amendment and the Due Process Clause, we analyzed the constitutionality of the challenged application of force solely by reference to the Fourth Amendment's prohibition against unreasonable seizures of the person, holding that the 'reasonableness' of a particular seizure depends not only on when it is made, but also on how it is carried out.").

In his opposition, plaintiff alleges that the deputies' alleged actions were conscious-shocking and arbitrary, and, thus, a substantive due process claim remains available. But the case he cites, *County of Sacramento v. Lewis*, aids defendants' argument, not his. In *Lewis*, the Supreme Court held that the Fourth Amendment did not apply, and a substantive due process analysis was warranted, because there was no seizure. 523 U.S. 833, 843 (1998) ("The Fourth Amendment covers only 'searches and seizures,' U.S. Const., Amdt. 4, neither of which took place here. No one suggests that there was a search, and our cases foreclose finding a seizure."). Here, plaintiff argues that there was a seizure of his person and his property.

### d. Fourteenth Amendment Conspiracy

Defendants argue that plaintiff's conspiracy claim is non-cognizable. They are correct. To sustain a section 1983 conspiracy claim, a plaintiff must "allege [some] facts to support the existence of a conspiracy among the defendants." *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). Plaintiff has failed to do so here. He alleges that "[d]efendants entered into an agreement

5

1  to deprive [p]laintiff of his constitutional rights by coordinating an illegal eviction and by
2  favoring Mr. Tumber's baseless complaint over [p]laintiff's lawful claim to possession." ECF
3  No. 6 at 16. There are no specific allegations evidencing this "agreement," and such unadorned
4  conclusions are insufficient to meet federal pleading standards. Additionally, no conspiracy
5  claim can be sustained, as defendants argue, for any due process violation, because, as noted
6  above, there is currently no viable due process claim.

7  In his sur-reply, plaintiff argues that the fact deputies credited Tumber's claim over his
8  own (and allowed him to change the locks and intervene in the questioning of plaintiff) is
9  evidence of a conspiracy. ECF No. 18-1 at 5. But these allegations are not indicative of a
10 conspiracy. The allegations indicate that Tumber genuinely believed that the home was his and
11 that the deputies, while skeptical of plaintiff's claim, did not definitively know which man had
12 proper ownership. Thus, there is no sufficient allegation that the defendants conspired to violate
13 plaintiff's rights.

### e. Claims Against the County

15 Plaintiff's claims against Yuba County fail. First, there is no *respondeat*
16 *superior* liability under section 1983. *See Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989). Rather,
17 to sustain a claim against a municipal defendant, a claimant must allege that some custom or
18 policy of the municipality underlies the alleged violation of his rights. *See Henry v. Cnty. of*
19 *Shasta*, 132 F.3d 512, 517 (9th Cir. 1997) ("A municipal defendant may only be held liable under
20 § 1983 if the unlawful actions of its employees or agents were taken pursuant to that defendant's
21 policies or custom."). Plaintiff has failed to allege any facts indicating that the violations of his
22 rights derived from any custom or policy of the county. He does vaguely allege that the Yuba
23 County Sheriff's Department has tolerated or encouraged self-help evictions, failed to train
24 deputies on legal standards governing civil possession disputes, and refused to investigate or
25 confirm title before removing individuals from the property. ECF No. 6 at 16. But this is little
26 more than a thinly disguised attempt to recast his allegations against the deputies into "customs"
27 or "policies" for which there are no supporting factual allegations. Additionally, there is no
28 allegation in the complaint that the defendants "encouraged" or "tolerated" a self-help eviction or

that they were able to confirm title at the time they had to decide how to separate plaintiff and Tumber.  Finally, deputies are not attorneys, and it cannot seriously be argued that the county was required to train them in every area of law that might prove relevant during the discharge of their duties.  Curiously, plaintiff's own allegations indicate that the legal disputes that followed this incident took a great deal of time and were resolved only by a settlement agreement between himself and Tumber.  *Id.* at 11.  Thus, a limited amount of training in the law governing civil possession disputes appears unlikely to have resolved the dispute.

### f.  Official Capacity Claims Against Sheriff Anderson

Similarly, plaintiff's official capacity claims against Sheriff Anderson are little more than claims against the county itself and, thus, should be dismissed for the same reasons.

### g.  Individual Capacity Claims Against Sheriff Anderson

Plaintiff's individual claims against Sheriff Anderson fail because, as defendants argue, there is no allegation that the sheriff had any personal involvement in the alleged violations. There is, for instance, no claim that, on the relevant date, Anderson was present for or aware of the events at the disputed property.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

### h.  Equal Protection Claim

Plaintiff's equal protection claims fail because he has failed to allege membership in any protected class.  To state a § 1983 Equal Protection claim, "a plaintiff must allege that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1165 (9th Cir. 2005) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (internal quotation marks omitted).  It is possible, in certain instances, to state a class of one claim, but such a claim requires a claimant to show that there was no rational basis for different treatment between himself and other, similarly situated individuals.  *See Gerhart v. Lake County Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2010) ("To succeed on his 'class of one' claim, Gerhart must demonstrate that the Commissioners: (1) intentionally (2) treated Gerhart differently than other similarly

situated property owners, (3) without a rational basis."). The Supreme Court has noted, however, that situations like the one at bar are poorly suited for a class of one claim:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008). It would make little sense to allow a class of one equal protection claim every time law enforcement officers were called to mediate a property dispute.

### i.  Conclusion

Based on the foregoing, I find that plaintiff's claims, save his Fourth Amendment claim based on the unlawful seizure of his property, should be dismissed with leave to amend. Leave to amend is proper because I am not convinced that these claims could not be saved by amendment. Plaintiff does, then, have to choose whether to amend and file another complaint or proceed only with the Fourth Amendment claim that the defendants have not moved to dismiss.

### Motion to Amend Summons

Plaintiff's motion to amend summons or, in the alternative, quash service, ECF No. 12, is denied as unnecessary. Defendants have not challenged service, and there is no purpose in amending the summons or quashing them so that they may be served again.

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion to amend summons or, in the alternative, quash service, ECF No. 12, is DENIED.

2. Plaintiff's requests to file a sur-reply, ECF Nos. 18 & 21, are GRANTED.

3.  Defendants' motion to dismiss, ECF No. 9, is GRANTED, and all claims, save for plaintiff's Fourth Amendment claim based on the unlawful seizure of his property, are DISMISSED with leave to amend.

      4.  Within thirty days of this order's entry, plaintiff shall either file an amended complaint or indicate, in writing, his intent to proceed with the lone remaining claim.

IT IS SO ORDERED.

Dated:   December 2, 2025                                       
                                                      JEREMY D. PETERSON
                                                      UNITED STATES MAGISTRATE JUDGE