UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WAYNE MCKAY,

　　　　　Plaintiff,

　　v.

YUBA COUNTY, *et al.*,

　　　　　Defendants.

Case No.  2:25-cv-2024-DAD-JDP (PS)

ORDER; FINDINGS AND RECOMMENDATIONS

This action proceeds based on plaintiff's second amended complaint.  ECF No. 24. Therein, he alleges that defendants Yuba County and Yuba County Sheriff's Deputies Keith Gelber and Brian Clegg violated his Fourth Amendment rights by forcing him to leave a property that he won at auction after its previous owner contended he was trespassing.  *Id.* at 4-8.  The deputy defendants ordered him to leave because, faced with competing claims about ownership of the property by plaintiff and the previous owner, they could not determine who had title.  *Id.* Plaintiff alleges that the officers' actions amounted to a seizure of both his person and his property.  *Id.* at 8.  With respect to the county, he alleges that its policies and customs contributed to the seizure.  *Id.* at 9-10.

Now, defendants have moved to dismiss the complaint, arguing that defendants Gelber and Clegg are entitled to qualified immunity and that plaintiff has failed to adequately allege a

1

*Monell* claim[1] against Yuba County.  ECF No. 25.  Plaintiff has filed an opposition, ECF No. 26, defendants have filed a reply, ECF No. 27, and plaintiff has motioned to file a sur-reply, ECF No. 29, which I will consider.  After review of the pleadings, I recommend that the motion to dismiss be granted.

Motion to Dismiss

      I.      Legal Standards

A complaint may be dismissed under that rule for "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully.  Iqbal, 556 U.S. at 678.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party.  *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc*., 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  *Chubb Custom Ins. Co.*, 710 F.3d at 956.  Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim.  *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

---

[1] Referencing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

II.    Analysis

In May 2023, plaintiff purchased a residential property in Marysville, California in an online real estate auction. ECF No. 24 at 4. In July 2023, after an escrow company notified plaintiff of the recording of a trustee's deed, plaintiff claims that he lawfully acquired the property. *Id.* On July 21, 2023, he went to the property to take possession and inspect it. *Id.* at 5. A few hours after his arrival, plaintiff alleges that the former owner, Amit Tumber, arrived at the property and confronted him, ordering plaintiff to "get the fuck out of my house" and threatening to call the police. *Id.* Plaintiff claims that Tumber used threats and "assaultive behavior" to try to force him to leave and, ultimately, law enforcement was called. *Id.* at 5-6.

Defendants Gelber and Clegg arrived, and plaintiff presented them with his recorded deed, but Tumber maintained that he was the lawful owner. *Id.* at 6. The officers interviewed the two claimants separately and, after they were unable to determine ownership, contacted a supervisor. *Id.* An unnamed supervisor ultimately made the decision that plaintiff would be ordered to leave the premises for the time being. *Id.* at 6-7. Plaintiff ultimately reached a settlement with Tumber in February 2024, that allowed him to take possession of the property. *Id.* at 8.

Plaintiff alleges that defendant Gelber and Clegg's actions constituted an illegal search and seizure (of both person and property), violating his Fourth Amendment rights. *Id.* at 8. He also alleges that Yuba County violated his rights by maintaining an unconstitutional policy, custom, or procedure, insofar as it "routinely dispatches" its law enforcement to foreclosure and ownership disputes without sufficient training to handle them. *Id.* at 9.

I note that I previously dismissed with leave to amend plaintiff's Fourth Amendment claim for seizure of his person against Gelber and Clegg, finding that these individuals were entitled to qualified immunity. ECF No. 23 at 3-4. I also dismissed plaintiff's claim against Yuba County for failure to adequately allege the existence of a custom or policy contributing to the violation of his rights. *Id.* at 6-7.

A.    Qualified Immunity

Defendants Gelber and Clegg are entitled to qualified immunity on plaintiff's claims that their actions constituted an unlawful seizure of both his person and his property. Qualified

3

immunity precludes civil liability under 42 U.S.C. § 1983 for state officials if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Additionally, defendants may be entitled to qualified immunity "even if they acted unconstitutionally, as long as a reasonable officer could have believed the conduct lawful." *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322 (9th Cir. 1995).

The analysis of the seizure of his person is substantively identical to the one I set forth in my previous order granting defendants' motion to dismiss, as the allegations have not meaningfully changed.  *See* ECF No. 23 at 3-4.  Therein, I found that:

> [I]t is unclear whether excluding an individual from a piece of real property, but otherwise allowing him full freedom of movement, amounts to a seizure of his person. *See White v. City of Markham*, 310 F.3d 989, 995 (7th Cir. 2002).  Generally, a personal seizure occurs when "there is a restraint on liberty to the degree that a reasonable person would not feel free to leave." *Doe v. Haw. Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003).  Here, plaintiff was not only free to leave, he was asked to do so.
>
> . . .
>
> Moreover, even if asking plaintiff to leave the premises did amount to an unlawful seizure of his person, defendants could have reasonably believed their conduct was lawful.  The complaint acknowledges that the resources required to make a definitive finding of ownership, including county records, could not be accessed at the time defendants arrived at the property.  ECF No. 1 at 10.  Plaintiff also alleged that Tumber was confrontational and verbally aggressive toward him during their encounter.  *Id.* at 6.  Faced with the possibility that violence could escalate in their absence, officers could have reasonably believed that asking one of the two claimants, neither of whom had a conclusive claim of ownership, to leave was lawful.

ECF No. 23 at 3-4.  The same allegations recur in the second amended complaint.  Therein, plaintiff again alleges that Tumber made threats and demonstrated "assaultive behavior."  ECF No. 24 at 5.  The complaint also acknowledges that the incident occurred after business hours, when it was almost certainly impossible to access county records.  *Id.* (noting that Tumber first arrived at the property sometime after 4:30 p.m.).  Thus, the same analysis applies.  I find that an officer in defendants' place could have reasonably believed that asking plaintiff to leave, pending resolution of the ownership dispute, was lawful.

4

In his surreply, plaintiff alleges that the second amended complaint corrects the foregoing issues by alleging that he was ordered to vacate under threat of arrest and that the deputies remained on site to ensure he did not return.  ECF No. 29 at 5.  This argument makes little sense.  My analysis did not rest on an assumption that the deputies' order that he temporarily vacate the property was toothless or made in jest.

I also find that defendants are entitled to qualified immunity as to the claim that defendants' actions amounted to an unlawful seizure of his property.  A seizure of property implicating the Fourth Amendment "occurs when there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 61 (1992).  Additionally, to violate the Fourth Amendment, the seizure must be unreasonable.  *Id.* at 61-62 ("Whether the Amendment was in fact violated is, of course, a different question that requires determining if the seizure was reasonable.").  I agree with defendants that here, faced with an uncertain situation, where two men each advanced a claim to ownership of a property and one (Tumber) was allegedly agitated, asking plaintiff to leave temporarily did not amount to a "meaningful interference" with his possessory interest.  Notably the complaint does not allege that the officers rendered any kind of final adjudicatory decision about ownership of the property that would have precluded plaintiff from settling the issue through the appropriate administrative or judicial channels in the days that followed.

And, even if asking plaintiff to leave was a "meaningful interference" with his possessory interest, it was not unreasonable.  In a case cited by defendants, and that I find analogous, authorities issued a trespass citation to the plaintiff "for the purpose of keeping the peace pending resolution of the property dispute in the civil courts . . . ." *Burgan v. Nixon*, 711 F. App'x 855, 857-58 (9th Cir. 2017).  The Ninth Circuit found that, in doing so, the defendant officials were entitled to qualified immunity because, in part, the question of whether the plaintiff had exceeded the scope of the easement at issue "remained murky." *Id.* at 858.  Here, faced with both an uncertain (and, in the moment, unanswerable) question of ownership and a brewing animosity between the property's claimants, a reasonable officer could have believed that ordering one to leave temporarily was lawful.

In his surreply, plaintiff argues that *Burgan* is inapposite, because it involved the issuance of a citation, rather than an order to vacate under threat of arrest. ECF No. 29 at 6. I fail to see how the distinction is of legal consequence. In both cases, officials invoked their authority to temporarily restrain an individual plaintiff from accessing a disputed piece of property. The terms of that temporary restraint do not appear relevant.

    B.    *Monell Claim*

I also find that, as before, plaintiff's *Monell* claims against Yuba County are inadequate to proceed. The second amended complaint alleges that:

> On information and belief, the County routinely dispatches deputies to civil possession disputes involving foreclosure and ownership conflicts, including unlawful detainer situations, tenant lockouts, and post-judgment enforcement, yet provides no written policy, training materials, or standardized guidance instructing deputies or supervisors how to lawfully handle such disputes or preserve the status quo absent a court-issued writ of possession, leaving such matters to be resolved ad hoc in the field.

ECF No. 24 at 9. This allegation is not substantively different from the one in the previous complaint that I found was insufficient. There, plaintiff alleged that:

> The unlawful conduct of the deputies was undertaken pursuant to a widespread practice, policy, or custom of the Yuba County Sheriff's Department, including but not limited to: (a) [t]olerating or encouraging self-help evictions in violation of due process; (b) [f]ailing to train deputies on legal standards governing civil possession disputes; (c) [r]efusing to investigate or confirm lawful title or possession before removing individuals from property.

ECF No. 6 at 16. I noted that these allegations were a thinly disguised attempt to recast his allegations as a county "policy" or "custom" and that requiring the county to train its law enforcement officers in every area of the law that might arise during their duties was unrealistic. ECF No. 23 at 6-7. That analysis holds here. No plausible policy promulgated by the county could have settled a fact-specific question of property ownership that is better reserved to court or administrative processes. Plaintiff does not explain how any written policy or "standardized guidance" could have resolved the sudden dispute that arose between him and Tumber. For these reasons, I also find that any failure to train claim levied against the county also fails.

6

In his surreply, plaintiff argues that "deputies responding to civil dispossession receive no training on distinguishing civil dispossession conflicts from criminal enforcement or on preserving the status quo absent judicial process." ECF No. 29 at 7. He does not allege that he was arrested or criminally charged, however. And the fact that arrest was threatened if he deliberately disobeyed a deputy's orders does not convert his interaction with the defendants into a "criminal enforcement." All orders given by law enforcement officers are ultimately backstopped by the threat of arrest if their target refuses to comply.

> C.    Leave to Amend

I find that plaintiff's claims against the defendants should be dismissed without leave to amend. I granted a previous motion to dismiss and offered plaintiff an opportunity to amend. ECF No. 23. His second amended complaint contains the same deficiencies, leading me to conclude that further opportunities to amend would be futile.[2]

Conclusion

Accordingly, it is ORDERED that:

1.    Plaintiff's motion to file a surreply, ECF No. 29, is GRANTED.

2.    The Clerk of Court is directed to administratively terminate defendant Wendell Anderson because he is not named in the second amended complaint.

Further, it is RECOMMENDED that:

1. Defendants' motion to dismiss, ECF No. 25, be GRANTED and the claims against defendants Yuba County, Keith Gelber, and Brian Clegg be DISMISSED without leave to amend.

2. The Clerk of Court be directed to enter judgment and close this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to

---

[2] I note that the second amended complaint also purports to sue an indeterminate number of "Doe" defendants that have not been served. The body of the complaint, however, fails to state any discernable claim against any of these individuals.

Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    June 9, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE